IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLETTE M. JENKINS, )
)
         Plaintiff, )
)
   -versus- ) Civil Action No.: 1:04CV00548
)
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
         Defendant. )

## **RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Charlette M. Jenkins, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act").[1] The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

---

   [1] The Social Security Disability Insurance Program was established by Title II of the Act, 49 Stat. 622 (codified at 42 U.S.C. § 401 et seq.), and the Supplemental Security Income Program was established by Title XVI of the Act, 86 Stat. 1465 (codified at 42 U.S.C. § 1381 et seq.).

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on July 16, 2001 (protective filing date, June 27, 2001), alleging a disability onset date of November 1, 1999. Tr. 48, 292. The applications were denied initially and upon reconsideration. Tr. 25, 27; 295, 296. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 42. Present at the hearing, held on December 2, 2003, were Plaintiff, her attorney, and a vocational expert (VE). Tr. 301.

By decision dated March 11, 2004, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 12. On May 7, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's impairments of sarcoidosis, bilateral knee disorders, obesity, and depression are considered "severe" based on

2

the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's testimony regarding her limitations is not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: a reduced range of light work activity.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has "more than a high school education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has transferable skills from skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.15 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a cashier II, <u>Dictionary ofr [sic] Occupational Titles</u>, (D.O.T. #211.462-010); as an electronics worker, (D.O.T. #726.687-010); and as a cloth folder, (D.O.T. #589.687-014).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

Tr. 18-19.

## Analysis

In her brief before the court, Plaintiff argues the Commissioner's findings are in error because the ALJ failed to find her condition equaled a listing, and erred in his analyses of her credibility and residual functional capacity (RFC). The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

### Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration (the "SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[3] The regulations applying these sections are contained in different parts of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical for purposes herein, the citations in this report will be limited to those found in Part 404.

4

determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (the issue before the court is not whether the claimant is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law).

Substantial evidence is:

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

5

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was fifty-one years of age. Tr. 12. She has a twelfth grade education with one year of college, and she has worked as a nurse's assistant, office cleaner, security guard, tobacco processor, and food service manager. According to the ALJ, Plaintiff initially alleged disability due to sarcoidosis and knee problems.

The ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) at any time relevant to the ALJ's decision. He also determined that Plaintiff met the disability insured status requirements of the Act as of her alleged onset of disability (AOD), and that she continued to do so through the date of his decision. Further, the ALJ found the medical evidence to establish that Plaintiff suffered from the severe impairments of sarcoidosis, bilateral knee disorders, obesity, and depression. He concluded, nevertheless, that none of these impairments met or equaled any of the Listing of Impairments.

6

1. The Listing of Impairments

The Supreme Court explained in Sullivan v. Zebley, 493 U.S. 521 (1990), that:

> The listings set out at 20 CFR pt. 404, subpt. P, App. 1 (pt. A)[4] (1989), are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.

Id. at 529-30 (footnotes omitted; footnote added). When a claimant satisfies a Listing by meeting all its specified medical criteria, he presumably qualifies for benefits. See Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990).

At step three of the sequential evaluation, the ALJ compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. See 20 C.F.R. § 404.1526(a). Medical equivalence can be found if these medical findings are at least equal in severity and duration to the listed findings. See id. A finding of medical equivalence is based on medical findings only, and such medical findings "must be supported by medically acceptable clinical and laboratory diagnostic techniques." Id. § 404.1526(b). The burden lies with the claimant to demonstrate that his disability, or combination of disabilities, medically equals a listed impairment. Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (citing 20 C.F.R. § 404.1526(a)).

---

[4] Hereafter, the "Listings." Although the Listings are contained only in Part 404, they are incorporated by reference in § 416.925 into Part 416. See 64 Fed. Reg. 46122, 46123.

7

Plaintiff contends that she meets or medically equals Listing 3.02A, which requires (1) medical evidence of a chronic obstructive pulmonary disease,[5] (2) with an $FEV_1$[6] at least equal to a value based on the claimant's height. The $FEV_1$ reading should represent the largest of at least three satisfactory forced expiratory maneuvers. Listings § 3.00E.

For an individual of Plaintiff's height,[7] the required $FEV_1$ value is 1.25. Plaintiff underwent a pulmonary function test ("PFT") on January 11, 2002. See Tr. 197-201. She had a pre-bronchodilator reading of 1.71, and a post-bronchodilator reading of 1.91. Tr. 198. It was noted that Plaintiff's spirometry "markedly improved post bronchodilator." Id. Clearly, Plaintiff fails to meet the criteria for Listing 3.02A.

Plaintiff argues, however, that her condition at least equals Listing 3.02A because she has a history of sarcoidosis, shortness of breath and chest pain, and she suffers from respiratory difficulties that inhibit her ability to perform work activities. But these aspects of her condition are just why her impairment is evaluated under a listing:

---

[5] "[G]eneral term used for those diseases with permanent or temporary narrowing of small bronchi, in which forced expiratory flow is slowed[.]" Stedman's Medical Dictionary 512 (27th ed. 2000) [hereinafter Stedman's].

[6] Forced expiratory volume in the first second ("$FEV_1$"), expressed in liters, is the measure of the amount of air one is able to exhale in one second. Holland v. Massanari, 152 F. Supp. 2d 929, 934, n. 3 (W.D. Tenn. 2001).

[7] Plaintiff's height had been given as both 64 inches (see, e.g., Tr. 193) and 65 inches (see, e.g., Tr. 247).

8

> Impairments caused by chronic disorders of the respiratory system generally produce irreversible loss of pulmonary function due to ventilatory impairments, gas exchange abnormalities, or a combination of both. The most common symptoms attributable to these disorders are *dyspnea*[8] on exertion, cough, wheezing, sputum production, hemoptysis, and *chest pain*.

Listings § 3.00A (footnote and emphases added). Further, the regulations provide that "we will not substitute your allegations of pain or other symptoms for a missing or deficient sign . . . to raise the severity of your impairment(s) to that of a listed impairment." 20 C.F.R. § 404.1529(d)(3). And in finding that Plaintiff's sarcoidosis is severe, the ALJ acknowledged that she suffers from respiratory difficulties that inhibit her ability to perform work activities,[9] but a severity finding alone is not enough to establish disability.

Nor do Plaintiff's medical records establish equivalency. Section 3.00A explains that, in order to show equivalence, "a longitudinal record is . . . important because it will provide information about such things as the ongoing medical severity of the impairment, the level of the individual's functioning, and the frequency, severity, and duration of symptoms." Section 3.00C adds,

> When a respiratory impairment is episodic in nature, . . ., the frequency and intensity of episodes that occur *despite prescribed treatment* are often the major criteria for determining the level of impairment. Documentation for these exacerbations should include

---

[8] "Shortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs[.]" Stedman's at 556.

[9] An impairment is "severe" only when it "significantly limits" a claimant's physical or mental abilities to perform basic work activities. 20 C.F.R. § 404.1521(a).

> available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, . . .; the treatment administered; the time period required for treatment; and the clinical response. . . . The medical evidence must also include information documenting adherence to a prescribed regimen of treatment[.]"

Id. (emphasis added).

Plaintiff's records fail on two accounts. First, they do not establish a level of care concomitant to an incapacitating disease. They further demonstrate that she either was not on, or not following, a prescribed treatment regimen.

The records of her primary caregiver, Dr. Lindsey de Guehery, show that Plaintiff failed to keep successive appointments in November 1996 and January 1997. See Tr. 182. There is no record of a visit with Dr. de Guehery between January 1997 and February 1999, when she came in with an upper respiratory infection. See id. ("The patient last seen over two years ago."). Plaintiff rescheduled a March visit to April, but failed to show for it. See Tr. 181-82.

Plaintiff went to the emergency room with atypical chest pain on June 30, 1999. Tr. 119. Plaintiff's chest pain was "promptly relieved" with nitroglycerin. Tr. 120. It was noted that she was not on medication at home. Tr. 156. She was advised to stop smoking and begin exercising, and was discharged with a prescription for Toprol-XL.[10] Tr. 120.

---

[10] Indicated, inter alia, in the long-term treatment of angina pectoris (chest pain). Physician's Desk Reference 633 (59th ed. 2005) [hereinafter PDR].

10

Plaintiff returned to Dr. de Guehery in follow up from her hospital visit. Tr. 181. The doctor noted that, although prescribed medication, Plaintiff did not pick it up. Dr. de Guehery prescribed corticosteroids. Plaintiff cancelled her next appointment, and failed to show for the following appointment. Tr. 180-81.

Although Plaintiff provided an AOD of November 1, 1999, she has no medical records at all from the date of her post-hospital visit with Dr. de Guehery through June 20, 2001 – almost two full years. See Tr. 180 ("The [patient] presents after a two year hiatus."). Plaintiff went to the emergency room with a cough on June 20, 2001, and was diagnosed with bronchitis. Tr. 170. She was released in less than two hours. See id., Tr. 165. It was noted that she was not taking any medication. Tr. 175. Plaintiff's pulse oximetry was ninety-nine percent. Tr. 166. A chest x-ray revealed cardiomegaly,[11] but no other unexpected change since June 30, 1999. Tr. 171.

On July 17, 2001, Plaintiff returned to Dr. de Guehery's practice with multiple complaints, and evaluation was initiated. Tr. 180. A DLCO[12] study was normal, revealing no dyspnea either at rest or on exertion. Tr. 173. The resulting report noted that Plaintiff had smoked for thirty-two years, and listed no medications. Although scheduled to return to Dr. de Guehery on August 8 and September 4, Plaintiff failed to show either time. Tr. 178-79.

---

[11] "Enlargement of the heart." Stedman's at 290.

[12] "Diffusing capacity of the lungs for carbon monoxide." Listings § 3.00F(1).

Plaintiff's next medical visit was not until February 28, 2002 – a seven and a half month lapse. She returned to the emergency room, again with chest pain. Tr. 202. It was noted that she took Prednisone,[13] but only as needed. Plaintiff consulted a new caregiver, Lincoln Community Health Center, the following September, with complaints of sinus pain and congestion, but no cough. See Tr. 248-49. She was prescribed Ventolin.[14] Plaintiff had an appointment in November, for vaginitis, and in March 2003, for eye blurriness. Tr. 245-46.

Plaintiff returned to the emergency room on April 25, 2003, for only the fourth time in as many years. Again, she complained of atypical chest pain, which was again helped with nitroglycerin. Tr. 260. Plaintiff told attending caregivers that "her breathing and 'sarcoid' has been better than in recent years," and that she was not taking steroids for her sarcoidosis. Id. She apparently had not received treatment for her sarcoidosis "in the last several months," since moving to Durham. Id.

It was decided that Plaintiff would undergo cardiac catheterization, "which was completely normal," as was a stress electrocardiogram. Tr. 261. Plaintiff reported that "she felt much better than she had in sometime." Id. It was suspected that Plaintiff's pain was due to gastroesophageal reflux and/or a hiatal hernia. She was

---

[13] Prednisone "is the most commonly used drug for sarcoidosis. . . . Prednisone almost always relieves symptoms due to inflammation. . . . Side effects usually can be managed by the patient working with his or her doctor." National Heart, Lung, & Blood Inst., U.S. Dep't of Health & Human Servs., Facts About Sarcoidosis 6 (April 2003), http://www.nhlbi.nih.gov/health/public/lung/other/sarcoidosis.

[14] Indicated for the treatment or prevention of bronchospasm. PDR at 1654.

Case 1:04-cv-00548-JAB   Document 15   Filed 05/17/05   Page 12 of 20

again "strongly advised to stop smoking." Id. Plaintiff was prescribed medications for reflux, smoking cessation, and cholesterol management, but not for sarcoidosis. See Tr. 262.

Plaintiff returned to the Lincoln Community Health Center in follow up to her hospital stay, and then again on August 1, 2003, for right lower quadrant pain. Tr. 243-44. A computed tomography scan of her abdomen and pelvis was largely unremarkable. See Tr. 253. An abdominal ultrasound was normal. Tr. 251. After returning to the Health Center on September 19 for a check-up, Tr. 290, there are no further medical records. At the September visit, Plaintiff was not taking any medication for sarcoidosis.

This exhaustive review of Plaintiff's medical records clearly reveals that she seldom sought care for the symptoms of her sarcoidosis; her symptoms rarely caused a level of symptoms necessitating emergency care; and her symptoms were apparently manageable enough that she was not required to regularly take medications. Accordingly, there is no evidence that the symptoms of Plaintiff's sarcoidosis equaled Listing 3.02A. The ALJ's equivalency decision finds further support in the opinions of the state agency experts.[15] See Tr. 25, 27, 295-96.

---

[15] "The signature of a State agency medical or psychological consultant on [a Disability Determination and Transmittal Form] ... ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Social Security Ruling (SSR) 96-6p, 61 Fed. Reg. 34466, 34468.

13

Plaintiff next asserts that she meets or medically equals Sections 3.00H and 3.00I of the Listings, but these sections do not list criteria for disabling impairments. SSA explains that:

> Each section of the Listing of Impairments has a general introduction containing definitions of key concepts used in that section. Certain specific medical findings, some of which are required in establishing a diagnosis or in confirming the existence of an impairment for the purpose of this Listing, are also given in the narrative introduction. . . . Following the introduction in each section, the required level of severity of impairment is shown under "Category of Impairments" by one or more sets of medical findings. The medical findings consist of symptoms, signs, and laboratory findings.

20 C.F.R. § 404.1525(c).

Sections 3.00H and 3.00I are paragraphs in the "narrative introduction" of Section 3.00.[16] Section 3.02, on the other hand, follows Section 3.01, "Category of Impairments, Respiratory System," and contains "the required level of severity" for "Chronic pulmonary insufficiency" to be "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a). Consequently, Plaintiff's argument that she meets or medically equals these Sections has no merit.

---

[16] Specifically with regard to Section 3.00I, SSA has stated, "[W]e added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems." SSR 02-1p, 67 Fed. Reg. 57859-02, 57860 (emphasis added).

14

2. Credibility

Plaintiff contends the ALJ erred in his credibility assessment as it is "based upon inadequate references to the record and did not consider the medical evidence as a whole before deciding her testimony was not credible." Pl.'s Br. at 9. She accuses the ALJ of "picking and choosing" among the records for evidence upon which to base his decision, but as Plaintiff states, the ALJ must only *consider* the entire case record; he "is not required to discuss every piece of evidence submitted." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (the ALJ need not address every piece of evidence); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (same).

"An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Black, 143 F.3d at 386. His decision need only demonstrate that he considered the evidence, Clifton, 79 F.3d at 1010, and contain his analysis of the record so that the reviewing court can follow his reasoning, Diaz, 55 F.3d at 307. In reviewing for substantial evidence, this court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

In support of his credibility decision, the ALJ stated:

> After a careful review of the evidence, the [ALJ] finds that the claimant's testimony is not fully credible since it is not supported by the objective medical evidence. In his second consultative report Dr. Bullard related that the claimant told him "that she could stand an hour possibly two without getting off her feet. She could sit all day with a

15

> comfortable accommodation. She could lift 20 pounds and possibly
> carry it 20 feet". In other words, the claimant conceded to Dr. Bullard
> that she is able to perform some work. Although Dr. Bullard specifically
> noted in his report that the claimant coughed frequently and very hard
> throughout his examination, she did not cough at all during the hearing.
> The results of her [PFTs] were fairly good, even though she testified
> that she continues to smoke cigarettes. She said that her activities are
> limited, but she is able to cook, drive a car, and attend church services.

Tr. 15-16.

Plaintiff urges that the ALJ erred in relying only on Dr. Bullard's report, but the above review of her medical records reveals little support for her allegations of disabling symptoms. She contends that the ALJ mistakenly focused on her appearance at the hearing, but the hearing examiner is advised to "consider any personal observations in the overall evaluation of the credibility of the individual's statements." SSR 96-7, 61 Fed. Reg. 34483, 34488.

Plaintiff argues that her ability to cook, drive a car, and attend church is not indicative of her ability to hold down steady employment, but she also acknowledges that this was not the sole basis for the ALJ's credibility decision. See Pl.'s Br. at 9-10 (citing to the above-quoted paragraph). Further, the only activity that she appears to have forsaken because of her health is fishing. See Tr. 76.

Although Plaintiff refers to "medical evidence" in her argument, she in fact relies on her own statements, both to her caregivers and in her testimony, for support. See Pl.'s Br. at 11-12. She contends the ALJ must consider her statements, and the ALJ duly noted Plaintiff's testimony. See Tr. 15. A claimant's

16

own statements about her symptoms, however, are not enough to establish disability. 20 C.F.R. § 404.1529(a). "An ALJ's evaluation of a claimant's subjective complaints of pain must 'consider all . . . symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence.'" Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001) (quoting 20 C.F.R. § 404.1529 (alterations in original)). The exhaustive review of Plaintiff's medical records provided above fails to support her allegations of disabling symptoms, as found by the ALJ.

Plaintiff further refers to her obesity and 1975 knee surgery in support of her inability "to stand for long periods of time or walk long distances," Pl.'s Br. at 11, but she fails to explain that she performed SGA with these conditions.[17] Moreover, the ALJ limited her RFC to standing only one hour per day, Tr. 16, which is consistent with her statement to Dr. Bullard that "she could stand probably an hour or so without getting off her feet," Tr. 193.

Plaintiff notes that the PFT report stated that she was easily fatigued and coughed during the examination, but the ALJ cited to this notation. See Tr. 15. She adds that it was reported that she gave fair effort but the examiner did not think she did as well as she could have. Although the ALJ referred to her "fair" effort, Tr. 14, he did not take note of the examiner's assessment. Accordingly, there is no

---

[17] Plaintiff's weight was recorded at 216 on 9/4/96, Tr. 183; at 201 on 7/6/99, Tr. 181; and 210 on 6/20/01, Tr. 165.

17

indication that the ALJ assessed this statement against Plaintiff in his credibility determination. Plaintiff has failed to establish that the ALJ's decision was in error.

3. RFC

Plaintiff argues that she is unable to work because of her "constant sickness" which causes excessiveness absenteeism. Pl.'s Br. at 13. She alleges that her severe impairments preclude her from performing *any* SGA, "[b]ased upon the medical evidence and testimony." Id. at 14; see also id. at 15 ("[D]ue to the combination of severe physical impairments as well as certain non-exertional limitations, [Plaintiff] is unable to perform ... work."). Plaintiff notes that she testified that she has been crying a lot, was sometimes depressed, and was having increased problems with memory and concentration. She stated that she was sick from two days to two weeks at a time. Plaintiff added that she could stand comfortably for only ten to fifteen minutes.

The medical evidence, however, described fully above, fails to support Plaintiff's arguments. Further, because the ALJ found Plaintiff's testimony was not fully credible, and this decision is upheld, Plaintiff cannot rely on her testimony to support her argument.

Plaintiff also cites the VE's testimony that, if found fully credible, she would be precluded from performing full-time, competitive employment. See Tr. 344. It is well established that for a VE's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. Walker v.

18

Case 1:04-cv-00548-JAB   Document 15   Filed 05/17/05   Page 18 of 20

Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). See also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). The ALJ presented to the VE a hypothetical claimant who could stand for up to one hour, sit all day, and lift up to twenty pounds, and would need an environment with clean, temperature-controlled air. Tr. 341-42. The VE responded with three different positions, each in significant numbers.[18] See Tr. 343. When presented with a second hypothetical claimant who incorporated Plaintiff's alleged limitations, the VE testified that such claimant would be precluded from full-time, competitive employment. Tr. 344.

The hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993). The ALJ's hypothetical claimant had an RFC identical to that which he found for Plaintiff. As Plaintiff was *not* found to be fully credible, and she has failed to demonstrate error in the ALJ's RFC finding, she cannot rely on the VE's response to the second hypothetical.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, IT IS

---

[18] In order to carry her burden at step five of the sequential evaluation, the Commissioner must provide evidence of a significant number of jobs in the national economy that a claimant could perform. See Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).

Case 1:04-cv-00548-JAB Document 15 Filed 05/17/05 Page 19 of 20

RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED. To this extent, Plaintiff's motion for summary judgment (Pleading no. 11) seeking a reversal of the Commissioner's decision should be DENIED, Defendant's motion for judgment on the pleadings (Pleading no. 13) should be GRANTED, and this action should be DISMISSED with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

May 17, 2005